United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APPLICA CONSUMER PRODUCTS, INC.,

    Plaintiff,

    v.

PUBLISHERS GROUP WEST INCORPORATED,

    Defendant.
_____/

No. C-05-3569 MMC

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S EX PARTE APPLICATION FOR WRIT OF POSSESSION AND TEMPORARY RESTRAINING ORDER**

    Before the Court is the application for an ex parte writ of possession and ex parte temporary restraining order, filed September 15, 2005 by plaintiff Applica Consumer Products, Inc. ("Applica"). For the reasons set forth below, the application is DENIED, without prejudice.[1]

**BACKGROUND**

    The instant action was filed September 6, 2005. Jurisdiction is based on diversity. Applica asserts causes of action against defendant Publishers Group West Incorporated ("PGW") for "specific recovery of personal property and damages for its detention," conversion, and an accounting.

---

[1] Applica's failure to provide a memorandum of points and authorities, and its failure to provide the Court with a proposed order, have unnecessarily hampered the Court's resolution of the instant motion. The Court further notes that this case has been designated for electronic filing; all papers in this case must be filed electronically.

## LEGAL STANDARD

**A. Writ of Possession**

Under California law, a plaintiff may obtain a writ of possession if it has (1) "established the probable validity of the plaintiff's claim to possession of the property" and (2) filed an undertaking in the requisite amount. See Cal. Code Civ. Proc. § 512.060. Under the circumstances presented in the instant case, a writ of possession may be issued ex parte only if the plaintiff demonstrates that (1) the defendant "acquired possession of the property in the ordinary course of his trade or business for commercial purposes"; (2) the "property is not necessary for the support of the defendant or his family"; (3) there is "an immediate danger that the property will become unavailable to levy by reason of being transferred, concealed, or removed from the state or will become substantially impaired in value by acts of destruction or by failure to take care of the property in a reasonable manner"; and (4) the "ex parte issuance of a writ of possession is necessary to protect the property." See Cal. Code Civ. Proc. § 512.020(b)(3).

An application for a writ of possession must be executed under oath and contain all of the following:

> (1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.
>
> (2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.
>
> (3) A particular description of the property and a statement of its value.
>
> (4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.
>
> (5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

See Cal. Code Civ. Proc. § 512.010(b).

"No writ directing the levying officer to enter a private place to take possession of any property shall be issued unless the plaintiff has established that there is probable cause to believe that such property is located there." See Cal. Code Civ. Proc. § 512.060(b).  Additionally, the Court may not issue a writ of possession until the plaintiff has filed with the Court an undertaking "in an amount not less than twice the value of the defendant's interest in the property or in a greater amount." See Cal. Code Civ. Proc. § 515.010(a).

**B.  Temporary Restraining Order**

The California Code of Civil Procedure provides that when a party seeks a writ of possession, that party may also seek a temporary restraining order, which may issue ex parte if the party demonstrates the probable validity of its claim to possession of the property, has provided an adequate undertaking, and has "established the probability that there is an immediate danger that the property claimed may become unavailable to levy by reason of being transferred, concealed, or removed or may become substantially impaired in value."  See Cal. Code Civ. Proc. § 513.010(b).

In addition, under the Federal Rules of Civil Procedure, an ex parte temporary restraining order may issue "only if (1) it appears from specific facts shown by affidavit or the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required."  See Fed. R. Civ. P. 65(b).

**DISCUSSION**

Lisa R. Castarphen, Applica's Vice President, General Counsel and Secretary ("Castarphen"), attests to the following facts:

In connection with a loan Applica made to non-party Bay/SOMA Publishing, Inc. ("Bay/SOMA"), Bay/SOMA executed a document titled "Secured Promissory Note," dated June 30, 2001, in the amount of $500,000, in favor of Applica.  (See Castarphen Decl. ¶ 3

3

and Ex. 1.) By its terms, the note was payable in full on June 30, 2003. (See id. Ex. 1 ¶ 2(b).)

On the same date, Bay/SOMA entered into an agreement titled "Security Agreement," whereby Bay/SOMA granted Applica a security interest in certain of its assets, including, but not limited to, all current and future inventory owned or acquired by Bay/SOMA ("Collateral"). (See id. ¶ 4 and Ex. 2 ¶ 1.1(c).) The Security Agreement further provides that in the event of default, Applica is entitled to, inter alia, "[e]nter upon and into and take possession of all or such part or parts of the asserts and properties of Borrower as may be necessary or appropriate in the judgment of the Lender, to permit or enable the Lender to manage the Borrower's Business, and to store, lease, sell or otherwise dispose of or collect all or any part of the Collateral, and use and operate said properties for such purposes and for such length of time as the Lender may deem necessary or appropriate for said purposes." (See id. Ex. 2 §§ 5.1, 6.1(c) (emphasis added).)

On January 20, 2001 and on January 13, 2005, Applica filed UCC financing statements with the California Secretary of State, giving notice of its security interest in the Collateral. (See id. ¶ 4 and Ex. 3.)

Castarphen further declares that on December 6, 2004, due to an unspecified "occurrence of an Event of Default under the Security Agreement," Applica sent Bay/SOMA a "Notice of Default and Acceleration under the Security Agreement Dated June 30, 2001." (See id. ¶ 5 and Ex. 4.) Applica, however, does not submit any evidence as to what Bay/SOMA did that constituted an Event of Default, and does not attest to Bay/SOMA's response, if any, to the Notice of Default.

Additionally, according to Castarphen, on June 1, 2005, "Applica conducted a foreclosure sale of the Collateral," at which Applica "was the successful and prevailing bidder . . . and is now the owner of the Collateral." (See id. ¶ 6.) By purchasing the Collateral at the foreclosure sale, Applica "did not assume any liabilities of Bay/SOMA to any parties." (See id.) Applica, however, has submitted no evidence as to precisely what it purchased at the foreclosure sale, and has submitted no documentation showing Applica's

4

current ownership of the Collateral.

Castarphen further declares that, since the time Applica became owner of the collateral on June 1, 2005, Applica "has been entitled to the immediate and exclusive possession of the Collateral, including all of the inventory of the products published by Bay/SOMA located at the warehouses" of defendant Publishers Group West Incorporated ("PGW") "in Indiana, Canada and outside of North America." (See id. ¶ 7.) Castarphen attaches to her declaration a document she states is a "table listing the Inventory as of the date of the Foreclosure Sale." (See id. ¶ 7 and Ex. 5.) Applica, however, fails to provide any foundation for the admissibility of this document, which purports to show an inventory consisting of approximately 145,000 books. (See id. Ex. 5.) Additionally, Applica provides no foundation for Castarphen's conclusion that any such inventory consists of property formerly owned by Bay/SOMA and purchased by Applica at the foreclosure sale.

Castarphen next attests that PGW "acquired possession of the Inventory in the ordinary course of business for commercial purposes as the United States Distributor for Bay/SOMA and was in possession of Inventory on the date of the Foreclosure Sale and continues to hold possession as of this date"; that, on information and belief, "the Inventory is not necessary for the support of the Defendant which is a corporation"; and that she "believe[s] that there is an immediate danger that the Inventory will become unavailable to levy by reason of being transferred . . . [because] Defendant continues to sell the Inventory." (See id. ¶¶ 8, 10, 11.) Again, Applica submits no evidence as to the basis for Castarphen's belief that PGW acted as Bay/SOMA's distributor, and no evidence as to why it believes the inventory itemized in Exhibit 5 consists of inventory formerly owned by Bay/SOMA.

According to Castarphen, Applica's counsel sent letters to PGW's counsel on July 6, 2005 and July 11, 2005, demanding the return of the Inventory, and that PGW has not responded to said letters. (See id. ¶ 9 and Ex. 6.)

Finally, Castarphen attests that the value of the Inventory at the time of the foreclosure sale was "not less than $3,289,962.85." (See id. ¶ 13.) Applica submits no

evidence as to the basis for this estimate.

Having read and considered the above submission, the Court finds Applica has not demonstrated its entitlement to an ex parte writ of possession or temporary restraining order, for the following reasons. First, Applica has presented no evidence as to the nature of Bay/SOMA's asserted default under the Note. Castarphen's declaration that Applica sent a Notice of Default to Bay/SOMA does not suffice as evidence that a default actually occurred.

Second, even assuming Bay/SOMA defaulted on the Note, Applica has presented no evidence as to precisely what Applica purchased at the foreclosure sale.

Third, Applica has failed to set forth in adequate detail the basis for its belief that PGW has possession of former Bay/SOMA inventory. Although Castarphen attaches to her declaration a document that purports to list various titles in PGW's warehouses in Indiana, Canada, and outside of North America, (see id. Ex. 5), there is no evidence as to how Applica learned of the existence of this inventory, or the basis for Applica's belief that it was formerly owned by Bay/SOMA. Consequently, there is no "showing" as to how PGW came into possession of the inventory, as required by § 512.010(b)(2) of the California Code of Civil Procedure.

Fourth, Applica has failed to submit evidence of "the location of the property" and, consequently, has not made a "showing that there is probable cause to believe that such property is located there," as required by § 512.010(b)(4) of the California Code of Civil Procedure.

Accordingly, Applica has not demonstrated "the probable validity of the plaintiff's claim to possession of the property" currently in possession of PGW, as required by § 512.060 of the California Code of Civil Procedure and, thus, has not demonstrated its entitlement to a writ of attachment or temporary restraining order.

Finally, Applica has not complied with Rule 65(b) of the Federal Rules of Civil Procedure, which requires a certification as to the efforts made to notify the opposing party or the reasons why such notice should not be required. (See Fed. R. Civ. P. 65(b).)

**CONCLUSION**

Accordingly, for the reasons set forth above, Applica's request for an ex parte writ of possession and ex parte temporary restraining order is hereby DENIED, without prejudice.

**IT IS SO ORDERED.**

Dated: September 16, 2005

MAXINE M. CHESNEY
United States District Judge